**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**September 2, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Peter Demetriades,**
**Petitioner Below, Petitioner**

**vs)   No. 15-1004** (Kanawha County 13-AA-62)

**West Virginia Offices of the Insurance Commissioner,**
**in its capacity as Administrator of the**
**Workers' Compensation Old Fund,**
**Respondent Below, Petitioner**

**MEMORANDUM DECISION**

Petitioner Peter Demetriades, pro se, appeals the September 17, 2015, order of the Circuit Court of Kanawha County affirming the April 11, 2013, final order of Respondent West Virginia Offices of the Insurance Commissioner, in its capacity as Administrator of the Workers' Compensation Old Fund ("Insurance Commissioner"). In his April 11, 2013, order, the Insurance Commissioner adopted a hearing examiner's recommended decision and found that a December 19, 2011, addendum to the parties' June 16, 2010, settlement agreement was not "unconscionable." The Insurance Commissioner, by counsel Jacqueline A. Hallinan, filed a response, and petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 16, 2010, the parties entered into a settlement agreement to settle petitioner's claims with regard to compensable injuries in workers' compensation claim nos. 970041258, 970059610, and 970059612, pursuant to West Virginia Code § 23-5-7. In the settlement agreement, "[t]he parties acknowledge[d] that the terms of this Settlement Agreement constitute[d] Full and Final Settlement of the indemnity and medical components (including, but not limited to, future medical treatment, prescription drug costs, medical appliances, etc.) of all the claims identified in this Settlement Agreement." Petitioner settled his claims for a total of $178,

1

933.80. The parties agreed that petitioner would be directly paid $90,000 in indemnity benefits. The parties further agreed that (1) the $88,933.80 in future medical benefits would be paid into a Medicare Set-Aside ("MSA") account and paid to petitioner as an annuity in the amount of $4,022.40 for the remainder of petitioner's life, but for no more than seventeen years; and (3) a third-party administrator would manage the MSA account.

The settlement agreement included a provision that "[t]he parties agree[d] that Medicare's interests have been considered[.]" The agreement further provided that "[petitioner] has been informed of his legal obligation relating to any monies allocated herein for medical benefit payments; and that a specific amount of this Settlement Agreement will be set aside and spent only on Medicare covered medical expenses." However, the parties agreed that "petitioner is currently not eligible for Medicare and that he is not reasonably expected to become Medicare eligible within thirty (30) months of execution of this Settlement Agreement." The parties also agreed that they were not required to submit the settlement for approval by the Centers for Medicare and Medicaid Services ("CMS") of the United States Department of Health and Human Services because "the settlement embodied by this Settlement Agreement will not result in [petitioner's] receipt of more than two hundred fifty thousand dollars ($250,000.00)." Petitioner was represented by counsel at the time of the June 16, 2010, settlement agreement.

On June 23, 2010, petitioner attempted to revoke the settlement agreement by executing a notarized statement. The Insurance Commissioner's third-party administrator for the Workers' Compensation Old Fund rejected petitioner's attempted revocation of the settlement agreement on the ground that the revocation was untimely. In December of 2011, the parties resolved their dispute over petitioner's attempted revocation of the June 16, 2010, settlement agreement by entering into an addendum to the settlement agreement. The parties agreed that (1) petitioner would be directly paid the $88,933.80 in future medical benefits; (2) petitioner would directly manage his MSA account instead of that account being managed by a third-party administrator as provided for in the original settlement agreement; and (3) petitioner would maintain his MSA account as a separate account. Petitioner acknowledged that "Medicare may not pay for any medical treatment related to his compensable injuries until such time as he demonstrates that he has used all the funds allocated to his MSA [account] . . . for medical components related to the compensable conditions . . . subject [to] this Agreement." Finally, the addendum provided that, to the extent that it did not modify the June 16, 2010, settlement agreement, the settlement agreement "remain[ed] in full force and effect." In a separate document entitled "summary of understanding by claimant," petitioner acknowledged that he was notified of his right to obtain legal representation. Petitioner further acknowledged that he entered into the addendum "voluntarily" and that it was "fair and reasonable." Petitioner executed both the addendum and the summary of understanding on December 6, 2011. The Insurance Commissioner executed the addendum agreement on December 19, 2011.

By a letter dated May 31, 2012, petitioner timely sought review of the December 19, 2011, addendum. Petitioner alleged that (1) the settlement provided an amount for future medical benefits that is insufficient to cover those expenses including the purchase of a new prosthetic leg; (2) the settlement agreement did not encompass all of petitioner's compensable injuries; and (3) the settlement implicitly provided that petitioner would receive $250,000 for future medical

benefits if he was not covered by Medicare. Pursuant to 85 W.Va.C.S.R. § 12-14.4(b), the case assigned was to a hearing examiner. The Insurance Commissioner objected to the hearing examiner reviewing the original June 16, 2010, settlement agreement, arguing that petitioner sought review only of the December 19, 2011, addendum. During two separate pre-hearing telephone conferences, petitioner agreed that "the hearing will be limited to whether or not the [December 19, 2011,] addendum to the settlement agreement is unconscionable."[1]

Petitioner was not able to appear for the March 13, 2013, hearing and called in a request for a telephonic hearing. The transcript for the March 13, 2013, hearing reflects that the hearing examiner attempted to grant petitioner's request. The hearing examiner explained that he attempted to return petitioner's call—in front of two witnesses—so that he could participate in the hearing, but that the call "was unanswered." The hearing examiner proceeded with the hearing. The Insurance Commissioner called one witness, Barbara A. Brown, an executive with the Commissioner's third-party administrator who signed the original June 16, 2010, settlement agreement. Ms. Brown testified that the June 16, 2010, agreement did not provide that petitioner would receive $250,000 for future medical benefits if he was not covered by Medicare. Rather, Ms. Brown explained that the $250,000 figure was mentioned in the agreement only to reflect that any settlement below that amount did not require CMS's approval.

In a recommended decision dated April 1, 2013, the hearing examiner determined that the December 19, 2011, addendum agreement was not "unconscionable" under 85 W.Va.C.S.R. § 12-14.[2] First, the hearing examiner rejected petitioner's contention that the settlement provided an insufficient amount to meet petitioner's future medical expenses. The hearing examiner noted that neither a settlement amount less than what a claimant would have otherwise received in workers' compensation benefits nor a progression of a claimant's injury constitute sufficient grounds to find a settlement unconscionable.[3] Moreover, the hearing examiner found that the issues of the amount

---

[1]The telephone conferences occurred on October 29, 2012, and December 4, 2012, the transcripts of which are part of the record herein.

[2] 85 W.Va.C.S.R. § 12-14 provides that a workers' compensation settlement is "unconscionable" if it constitutes a miscarriage of justice or shocks the conscience according to various factors set forth therein.

[3]85 W.Va.C.S.R. § 12-14.3 provides, in pertinent part, as follows:

> All workers' compensation settlements are presumed not to be unconscionable. The claimant shall at all times have the burden of proving that a settlement agreement is unconscionable. *The facts that the terms of a workers' compensation settlement are such that the claimant may not have received the same amount of benefits which he would have received under chapter twenty-three of the West Virginia Code, that the claimant may have been able to obtain more benefits had the claimant chose to not enter into the*

(continued . . .)

3

received by petitioner for future benefits was determined by the original June 16, 2010, settlement agreement which "[was] not the subject of this decision." Second, the hearing examiner similarly found that the original settlement agreement, which was not under review, determined what compensable injuries are the subject of this case. The hearing examiner found that the December 19, 2011, addendum only modified the method of payment of petitioner's future medical benefits and otherwise left the June 16, 2010, settlement agreement in "full force and effect."

Third, the hearing examiner rejected petitioner's contention that the June 16, 2010, settlement agreement implicitly provided that petitioner would receive $250,000 for future medical benefits if he was not covered by Medicare. The hearing examiner determined that the $250,000 figure was mentioned in the agreement only to reflect that any settlement below that amount did not require CMS's approval. Thus, even if the June 16, 2010, settlement agreement was under review, the hearing examiner found that there was no merit to petitioner's argument that he should receive additional compensation for future medical benefits.[4] Finally, the hearing examiner evaluated the December 19, 2011, addendum according to factors set forth in 85 W.Va.C.S.R. § 12-14.2. The hearing examiner concluded that the addendum was not "unconscionable," as that term is defined in that regulation, and recommended that the December 19, 2011, addendum be upheld.

In a final order entered April 11, 2013, the Insurance Commissioner adopted the hearing examiner's April 1, 2013, recommended decision upholding the December 19, 2011, addendum. Petitioner appealed the final order to the Circuit Court of Kanawha County.[5] On September 17, 2015, the circuit court entered an order affirming the Insurance Commissioner's April 11, 2013, final order. The circuit court found that the Insurance Commissioner did not clearly err in adopting the hearing examiner's recommended decision. It is from the circuit court's September 17, 2015, order that petitioner now appeals.

---

*settlement, or that the claimant's injury or occupational disease has unexpectedly progressed or become worse since the time of the settlement was entered into are not sufficient to render a settlement unconscionable.* Rather, the claimant must prove the settlement was unconscionable based on the criteria and standards set forth in subsection 14.2 of this section.

(emphasis added)

[4]In his May 31, 2012, letter asking for review of the December 19, 2011, addendum agreement, petitioner calculated that he should receive an additional $161,066.20 in future medical benefits ($250,000 minus $88,933.80) despite the fact that he also received $90,000 in indemnity benefits.

[5]85 W.Va.C.S.R. § 12-14.5 provides, in pertinent part, that "[a]ny aggrieved party shall have the right to appeal the order of the Insurance Commissioner to Circuit Court[.]"

"On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in [West Virginia] Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." *Kostenko v. W.Va. Offices of Ins. Com'r*, No. 12-1493, 2013 WL 6283835, at *3 (W.Va. December 4, 2013) (memorandum decision) (quoting Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996)).[6]

On appeal, petitioner challenges the circuit court's September 17, 2015, order on both procedural and substantive grounds. We note that the authority to settle workers' compensation claims is found in West Virginia Code § 23-5-7. Generally, "no issue that is the subject of an approved settlement agreement may be reopened by any party[.]" W.Va. Code § 23-5-7(a). However, West Virginia Code § 23-5-7(b provides, in pertinent part, that, "[t]he Insurance Commissioner may void settlement agreements entered into by an unrepresented injured worker which are determined to be unconscionable pursuant to criteria established by rule of the commissioner." Pursuant to West Virginia Code § 23-5-7(b), the Insurance Commissioner promulgated 85 W.Va.C.S.R. § 12-14 which set forth procedural and substantive standards for evaluating a settlement thereunder.

We initially address petitioner's procedural arguments and review the challenged rulings under an abuse of discretion standard.[7] First, petitioner contends that the hearing examiner erred in failing to review both the June 16, 2010, settlement agreement and the December 19, 2011, addendum. The Insurance Commissioner counters that petitioner sought review only of the addendum. "The rule in West Virginia is that parties must speak clearly . . ., on pain that, if they forget their lines, they will likely be bound forever to hold their peace." *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996). During two separate pre-hearing telephone conferences, petitioner agreed that "the hearing will be limited to whether or not the [December 19, 2011,] addendum to the settlement agreement is unconscionable." Therefore, we conclude that the hearing examiner did not abuse his discretion in finding that the June 16, 2010, settlement agreement was not under review.

Second, petitioner asserts that he was not able to appear at the March 13, 2013, hearing. Because of his absence, petitioner was not able to cross-examine Ms. Brown, an executive with the Commissioner's third-party administrator. However, we note that the transcript from the March

---

[6]The West Virginia Administrative Procedures Act, West Virginia Code §§ 29A-1-1 to 29A-7-4, applies to this case pursuant to West Virginia Code § 23-5-7(b) and 85 W.Va.C.S.R. § 12-14.5.

[7]85 W.Va.C.S.R. § 12-14.4(b) provides, in pertinent part, that "[t]he hearing examiner shall have broad discretion in regard to the scope of evidence and discovery" and that hearings shall otherwise be in accordance with West Virginia Code of State Rules §§ 85-7-4 to -10. 85 W.Va.C.S.R. § 7-5.4 provides, in pertinent part, that "every hearing officer appointed by the [Insurance Commissioner] shall have the power to . . . dispose of procedural requests."

13, 2013, hearing reflects that the hearing examiner attempted to grant petitioner's request for a telephonic hearing. The hearing examiner explained that he attempted to return petitioner's call—in front of two witnesses—so that he could participate in the hearing, but that the call "was unanswered." Thus, we find that the hearing examiner's decision to proceed with the hearing did not constitute an abuse of discretion.

We further find that, even assuming, *arguendo*, that the decision to proceed with the hearing was in error, it did not prejudice petitioner's rights. Ms. Brown testified that the $250,000 figure was mentioned in the June 16, 2010, settlement agreement only to reflect that any settlement below that amount did not require CMS's approval. As previously discussed, the June 16, 2010, agreement was not under review. Moreover, the purpose of the inclusion of the $250,000 figure was evident from the language of the agreement itself. Therefore, we find that the fact that petitioner did not have the opportunity to cross-examine Ms. Brown was not harmful to his case. Accordingly, we conclude that (1) the hearing examiner did not abuse his discretion in proceeding with the March 13, 2013, hearing; and (2) even assuming that decision was in error, it was harmless.

We now turn to petitioner's substantive arguments. Petitioner makes three specific arguments that the December 19, 2011 addendum is "unconscionable" as that term is defined in 85 W.Va.C.S.R. § 12-14: (1) that an insufficient amount was provided to meet petitioner's future medical expenses; (2) that some of petitioner's compensable injuries were not considered in the amount provided to meet petitioner's future medical expenses; and (3) that petitioner was implicitly guaranteed that he would receive $250,000 for future medical benefits if he was not covered by Medicare. The Insurance Commissioner counters that petitioner is precluded from making these arguments because they are complaints about the June 16, 2010, settlement agreement. As previously discussed, the June 16, 2010, agreement was not under review. In that agreement, petitioner agreed that "the terms of this Settlement Agreement constitute[d] Full and Final Settlement of the indemnity and medical components (*including, but not limited to, future medical treatment . . .) of all the claims identified in this Settlement Agreement.*" (emphasis added) We note that the December 19, 2011, addendum only modified the method of payment of petitioner's future medical benefits and otherwise left the June 16, 2010, settlement agreement in "full force and effect." Therefore, we concur with the Insurance Commissioner that petitioner is precluded from making these arguments.

However, despite his ruling that the June 16, 2010, agreement was not under review, the hearing examiner addressed the merits of petitioner's third argument. Thus, we also address it. Petitioner contends that he should receive an additional $161,066.20 in future medical benefits because petitioner was implicitly guaranteed that he would receive $250,000 for future medical benefits if he was not covered by Medicare.[8] We find that the language of the June 16, 2010, settlement agreement unambiguously reflects that the $250,000 figure was mentioned only to reflect that any settlement below that amount did not require CMS's approval. Therefore, we find

---

[8]*See* fn.4, *supra.*

no merit to petitioner's argument that he should receive an additional $161,066.20 in future medical benefits based on the $250,000 figure.

Finally, we note petitioner's many general statements that the December 19, 2011, addendum is "unconscionable."[9] Under 85 W.Va.C.S.R. § 12-14.2,

> A workers' compensation settlement shall be considered unconscionable, and therefore be declared void as against public policy, if it is found to constitute a gross miscarriage of justice or if the terms of the settlement shock the conscience.
>
> Criteria to be considered by the Insurance Commissioner in determining whether a settlement is unconscionable include, but are not limited to: [(a)] The relative position of the parties involved in the settlement at the time the settlement was entered into; [(b)] The adequacy of the bargaining position of the parties at the time the settlement was entered into; (c)] The meaningfiul [sic] alternatives available to the claimant at the time the settlement was entered into; [(d)] The existence of specific unfair terms in the settlement agreement; [(e)] The nature of the entire agreement; [(f)] Whether the claimant was provided ample opportunity to read and review the settlement agreement and/or whether the settlement agreement was read to the claimant; [(g)] Whether the claimant was not informed of his ability to obtain a lawyer to assist in the review of the agreement; [(h)] Whether any of the material terms of the settlement agreement were not conspicuous; [(i)] The percentage of total benefits provided for under the settlement terms which have actually been received by the claimant when the claimant requested the settlement be reviewed; and [(j)]The time that has elapsed between the time the settlement was entered into and the time the claimant requested the settlement be reviewed.

Based upon our review of the record, and consideration of the factors set forth in 85 W.Va.C.S.R. § 12-14.2, we find that the circuit court correctly found that the hearing examiner did not clearly err in determining that the December 19, 2011, addendum was not "unconscionable" as that term is defined above. Accordingly, we find no error in the circuit court's September 17, 2015, order.

For the foregoing reasons, we affirm the circuit court's September 17, 2015, order upholding the Insurance Commissioner's April 11, 2013, final order that adopted the April 1, 2013 recommended decision of the hearing examiner.

---

[9]*See Pauley v. Walker*, No. 14-0933, 2015 WL 6844532, at 1 n.2 (W.Va. November 5, 2015) (memorandum decision) (recognizing that "when a litigant chooses to represent himself, it is the duty of . . . this Court to insure fairness, allowing reasonable accommodations for the pro se litigant so long as no harm is done an adverse party . . . .'") (quoting *State ex rel. Dillon v. Egnor*, 188 W. Va. 221, 227, 423 S.E.2d 624, 630 (1992)) (internal quotations, citations, brackets omitted).

Affirmed.

**ISSUED:** September 2, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

8